The fourth district appellate court of the state of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning folks. This is case number 4-24-0705, People v. Lionel Harris. Let's first have appearances for the appellant. Nancy Vincent. Okay, and for the appellee? Kara Jones. Thank you. Ms. Vincent, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel, my name is Nancy Vincent and I represent the appellant Lionel Harris in this matter. This was a circumstantial case and a close one at that. Appellant Lionel Harris was charged with first degree murder and specifically with personally discharging a firearm that resulted in Darrell Keller's death. In terms of direct evidence, there was very little. There was no statement to the police, no DNA connecting him, no fingerprints connecting him to Keller's death, no evidence placing him in that Mercury Montego that the state alleged the murder occurred in that belonged to Dominic Clark's mother, no weapon, no ballistics, and no eyewitness. The evidence that they did have was all circumstantial and that was tracking the path of the device associated with Dominic Clark, which was also determined to be at or near a police station when Mr. Harris gave a DNA sample. But importantly, there's no evidence to indicate that Dominic Clark was not also present at the time. There was a device associated with an email account that contained approximately 1,700 emails, only 11 of which had Mr. Harris's full name and none of which were personal in nature. About 715 of those emails had somebody else's name entirely, the name of Aaron Evans. There was a path tracked from Peoria to Chicago and back, including where Dominic Clark's mother lived and where they left Dominic Clark's grandmother's car. There was Beulah Clark's, who was Dominic Clark's mother, her abandoned Mercury Montego with the backseat missing in the city of Chicago. Keller's fingerprints were in the car. The possibility of Keller's blood was in the car. They were unable to eliminate him as a contributor of the DNA. An informant that was used as a state actor to elicit statements from Mr. Harris, allegedly confessing to the murder. Counsel, good morning. You have begun your argument this morning, underscoring that the evidence here really was all circumstantial. But our Illinois Supreme Court really has recognized that circumstantial evidence alone can be overwhelming. We've got People v. Patterson, a 2005 case. We've got Sutherland, a 1992 case. But here we actually have more than that, do we not? We've got defendants' own words describing and admitting to this murder, along with McCree, the informant's account of what the defendant had told him previously. Isn't that substantial evidence of defendant's guilt here? It is evidence for the jury to have considered, and the court has anticipated where I was going with this. What I was about to address next were those matters. Yes, that existed, that was presented. But the problem with that is that the state started to stack the deck against Mr. Harris and this circumstantial evidence using some of these items. And first and foremost, those statements, the overhear recordings and those statements. About half of those overhear recordings are just dead air. And there's no explanation that the state offered as to why that happened such that the recordings could be considered reliable. Now, I understand that Mr. McCree also testified to those statements, but here's the problem. It mattered because the 13 minutes that the state found useful to its case out of a month of alleged recordings was encouraged by an eager volunteer. And he was used as a plant to encourage Mr. Harris to talk. So recall again, there's no confession that was made to the police. If I may, I guess my question is though, what evidence is there in the record that the was tampered with? There is none, but that's also kind of part of the problem. There's no explanation at all for what happened here. The state at one point was basically, the state's position was, well, we have these 13 minutes and Mr. Harris has access to that. So what's the problem here? The problem is, as he explained at one point prior to trial, he wanted to be able to point out that they talked in the cell all the time. And a lot of times they discuss things that Mr. Harris explained did not occur or weren't true, and they were just killing time. And recall that this was during COVID where they're locked into their cells for 23 hours a day. So that's basically how they pass the time. And if the court listens to the entirety of these recordings, there are a lot of extraneous matters that they're discussing, but there is at least two weeks of just nothing but dead air. But we know that only one day, July 28th, was the transcript was shown to the jury. It was played for the jury. There weren't any other portions that the jury heard, correct? That is correct, but that is also part of the problem. What is the problem? The problem is that over the course of this month of overhear, Mr. Harris is alleging that there were other conversations that he wanted to be able to introduce into evidence, but he couldn't because they weren't there. The problem is the reliability of these recordings as a whole. The state got to cherry pick 13 minutes, but what about the rest of it? Well, excuse me, counsel, what could possibly have been on there that would have been of assistance? I mean, I'm asking you to speculate, but you're claiming that it was prejudicial in some way. How could it possibly have been prejudicial to not have this 13 minutes, or excuse me, the balance of the period recorded? Well, as Mr. Harris explained in pre-trial hearings, there were several conversations that he and Mr. McCree had in the cell. He said that there were instances where they discussed things that weren't true, or that he later said this alleged confession wasn't true. He wanted to be able to cross-examine Mr. McCree on that. The problem is this, while Mr. McCree is there to testify, he had credibility problems of his own, of course, and so did Mr. Harris. It would have been only helpful to have the jury be able to hear from their own mouths during the overhear as opposed to Mr. McCree saying after the fact, oh, well, he never told me it was false. Mr. Harris has no way of countering that without the recordings, which the state alleged occurred and had no explanation for why they didn't. So, is your argument now on appeal that because there were gaps, that the recording was not reliable? The recording, certainly the one that was shown to the jury, or that was played for the jury, was not reliable? That's your argument on appeal, is that correct? Reliability, certainly as I read your brief, I think you've mentioned or underscored a few other things right now, but the reason I'm asking that is almost as a preliminary matter, I mean, that's different than the objection that was made at trial, which was based on relevance and failure to lay an adequate foundation, and then in the Harris mentioned, the allegation was, or the argument was that the recordings were more prejudicial than probative. So, the reliability, the argument that you're making today really is forfeited, is it not? Since it wasn't made before, made earlier in the trial. As I addressed in my brief, you know, the whole point of making objections is to put the court on notice that there's a problem, and I don't think even the casual reader of this record could conclude that Mr. Harris didn't try many times to point out to the court the problem with this recording. He mentioned more than a few times that there's a lot of missing stuff here, and what the problem with that missing stuff is. He may not have used the terminology, but he's communicating the idea, and the idea is that this stuff is missing, and it's unfair. Now, he didn't use the term reliability, but that is the core of what he's trying to communicate. It's also the more prejudicial than probative and all the other things he made the objections to, but in terms of what the overall theory behind making an objection is, I mean, the whole idea is to give the trial court the first opportunity to correct it so we don't have to have these conversations on appeal to start with, and I would posit that Mr. Harris did that. I mean, the trial court was aware that there was a problem with these recordings. Mr. Harris may not have used the right word or may not have used a particular word, but he made clear what the issue was. I would suggest... I guess this defendant proceeded pro se. He is held to pretty much the same standard as an attorney would be, so to just say that he conveyed the idea when we're talking now on appeal regarding a specific argument regarding reliability, inaudibility, gaps, I mean, he's not held to a different standard, so I don't think this court can attribute arguments to him that he didn't make. I would agree with that, Your Honor, and frankly, I would be making the same argument if he had counsel and these arguments were made. I'm not suggesting that Mr. Harris made the argument pro se. I'm suggesting that the argument isn't forfeited because he communicated the ideas that he needed to communicate. The trial court was on notice of the problem, and that, I think, is what the overall arching purpose of the objections are. Now, should this court find it to be forfeited, I still argue that it would fall under first plain error because it is a closed case for all the reasons that are explained in the brief and that I've outlined previously, so forfeited or not, the error is still there, and I think it's still prejudicial, and I think it's still reversible error for all the reasons that are explained, so whether or not it's forfeited would just be a function of how the court gets to the final answer. To continue, so in terms of why or how the state started to stack the deck against him upon the circumstantial evidence, I failed to respond to fully one of Justice Zinoff's observations before. Yes, circumstantial evidence can be overwhelming. The argument here is that in this particular case, it's not for all the reasons that are stated in the brief and I've gone through, and to continue with how the state managed to stack the deck on top of the circumstantial evidence, you've also got a witness that wasn't shown to be unavailable at the time of this trial. Excuse me, what authority is there that you have given to this court or could give to this court that that showing needs to be made? Which showing? I'm sorry. That at the time of trial, as opposed to at the time the deposition was taken, that the witness needs to be unavailable. The trial court here already ruled on this issue. Well, I was unable to find a case directly on point for that particular issue, so I had to rely on the rules. And here, while the trial court did find her to be unavailable in June of 2022, trial here actually occurred in October of 2023. And so what are you suggesting this trial court should have done? Well, is it the trial court are you saying should have sua sponte, said to the state, well, you know, are you asking me to review my ruling that I made earlier? There was no objection at trial when this deposition came in. That is very true. And again, you know, here we find ourselves back in the same position with, you know, Mr. Harris is proceeding pro se, and he's not doing things in the correct order, but he is making it clear that he does have a problem with this deposition. And he made that clear at the time it was taken. The court will recall on the record before the court ruled that the deposition that Mr. Harris himself objected, and that's when he still had counsel. And then counsel reiterated that objection. So Mr. Harris has made it clear all along that he is objected the evidence deposition being taken in lieu of testimony. And then the record also indicates that he's attempting to subpoena her. He didn't fill out the subpoena correctly, apparently, because he doesn't have an address in there. But he's making it clear on the record that he's trying to get her into court personally to testify. And that actually also kind of dovetails into the problem with not allowing him the funds for a private investigator, because had that occurred, he could have had some assistance in locating Ms. Rogers to determine if she is in fact back in Peoria as he believed she might be. Well, the record reflects counsel, does it not, that the court didn't deny that request, but asked the defendant to put it in writing. And the defendant never did that, did he? Well, it was denied because it wasn't in writing. But I would point out that when the original request was made when he still had counsel, that was just done verbally and it was granted on the spot. So I don't know that Mr. Harris would have necessarily anticipated the need to put it in writing. And more to the point, why there are different standards depending on whether or not it's done by counsel or done by a defendant pro se, I'm not sure that that is necessarily altogether fair in terms of the overarching purpose behind what Mr. Harris is trying to do, which is to get his witnesses in and get... And Aja Gay-Tong was actually under subpoena. All he really needed was some assistance in notifying her that there was a court date. He would have been unable to do that himself. He can't call her himself from jail and he couldn't have written her a letter. So he really did need the help. And if the court was... Counsel, if I may, I mean, he was aware, was he not, four days before trial, at least, that those subpoenas had not been served? He was, but without the assistance... And did he address that with the trial? I mean, at the outset during pre-trial matters, he didn't address it with the court at that point, did he? My memory... I'm not exactly sure, but I don't believe he did. And simply because there are so many other things going on, but I don't believe he actually got around to saying anything until the state had rested and he was trying to call his own witnesses, if I remember correctly. I'm not exactly certain, but I think that's correct. But it brings you back to... It would have not been that difficult, four days prior, for the trial court to just offer the assistance of a private investigator and funded it. And that individual could have simply gone to the address that was on the validly served subpoena that had been continued for trial and determined if Asia Gaytan was there. I just don't see where that was going to be that much of a problem in terms of at least offering Mr. Harris the opportunity to present his defense. And Asia Gaytan was an important witness. Apparently, she was an occurrence witness to where the body was left. And the individuals that she described did not match the description of Mr. Harris. That would have been helpful to his defense, especially in light of the fact that there's no direct evidence that he was in the car or at the scene or any of those other matters. According to Detective Landwehr, he was identified as being at Kepler's apartment outside several hours before, which I address in Argument 3, I believe. And I won't go into great detail with that. That's all outlined in the brief. But in terms of anything in the car, you know, Mr. Harris's prints aren't in the car. There's no DNA connecting into the car. It's Dominic Clark's mother's car and Dominic Clark's phone that's being tracked back and forth from the car. So from that perspective, you know, she would have been a crucial witness in his defense and would have been helpful to his defense. And I think it is prejudicial to prevent him from at least making the effort to get her in there. There was a validly served subpoena. It would not have been a problem to at least send somebody out to notify her that she needed to be in court. He wasn't able to do that from a jail cell. Defendant never asked for a continuance when he learned these subpoenas weren't served, did he? I don't believe he did. And actually, when the subpoenas had been served, that was the state's continuance. And, you know, he didn't ask for continuance, but at that point, he'd been in jail for quite some time. So I can certainly understand the reluctance to make the request, especially when it would have been a simple matter just to offer the assistance of a private investigator to send somebody out during the state's case and see if Ms. Gaetan could be located and notified to come to court or a few days before. Thank you. Thank you, counsel. All right, Ms. Vincent, you're out of time, but you have time and rebuttal. Ms. Jones, you may proceed with your argument. Thank you, your honor. May it please the court, counsel. My name is Kara Jones and I'm with the state's attorney's appellate prosecutor's office and I'm here on behalf of the state. With regards to the issue, with regards to the recordings, your honor is correct. This issue has been forfeited. The specific issue they're raising on appeal is that there were quote-unquote inaudible portions, specifically that some days weren't recorded. That was not raised in a post-trial motion and therefore was forfeited, but they have argued first prong plain error or argued or attempting to argue plain error. And of course, the first step in plain error review is whether there was an error at all. There's no inaudible portion of the recording that was that was presented to the jury. They're not arguing that there was any problem with the with the portion of the of the audio that was presented. What they're arguing is that there are quote-unquote gaps that specifically on on a number of days there was no recording made. They they she argues that there was dead air and a half of the recordings are just dead air. That's incorrect. There just isn't a recording for that particular day. And there was, despite counsel's argument otherwise, there was evidence that there was no tampering with this with these with these recordings or recording itself. The evidence was that it was in a TV, was embedded in a TV, and that TV that recording couldn't be accessed without physically removing part of the of the TV itself. It worked when it was plugged in. It didn't record when it wasn't plugged in. We don't know the whether who unplugged it. There were two people in that cell, but it wasn't recorded. But more specifically, this over here was for a 30-day period that they're arguing essentially that has to if you have a 30-day period for a work of an over here, you have to record every single day. And they haven't cited any authority to establish that you have to record every day that the over here is authorized or you can't use any of the video, which is essentially what they're arguing. How do you respond? Good morning, counsel. How do you respond to opposing counsel's argument that the defendant didn't have the opportunity to introduce parts of the recordings that had other conversation that may have, I guess, put a shine, shown, I guess, shined a different light on the July 28 discussion or conversation that was played for the jury? Well, Your Honor, essentially, they're trying to argue completeness. And they argued that very briefly, actually incompletely in their brief. And there are two forms of completeness doctrine. One is the common law completeness doctrine, and one is rule of evidence 106. The common law, first of all, the issue's been waived, or at least forfeited. I mean, they don't argue. He didn't raise an issue with regards to completeness at the trial court. And they actually did not fully argue it or cite any case law in their brief supporting that either form of the completeness doctrine is appropriate. So they've actually waived it. And they didn't argue that forfeiture could be excused under plain error with regards to the completeness argument. So they've actually forfeited plain error review with regards to the common law completeness doctrine, which is essentially what they're arguing. But even if it's not forfeited, there's no error here because the common law completeness doctrine doesn't apply because it only applies to additional parts of the same recording or the same statement. And they're not arguing that here. They're arguing that there were conversations on alleged conversations on another day that didn't end up being recorded that should have been in all fair and should have been presented. But in order for, and so they're essentially arguing Illinois rule of evidence 106, which does not require that the recording be in the same part of the same statement. It can be in a different time, but it has to be used as a means to admit evidence that you first have to show that the statement that's being used is misleading or to put it in a proper context. It cannot be in the case established that the rule is not a means to admit evidence that aids a defendant in proving his or her theory of the case. That's essentially what he's trying to do here. He's trying to establish, oh, I didn't tell this guy this. I was just telling stories. In fact, he, I mean, he numerous times throughout this, I mean, there were numerous hearings about these recordings and throughout most of those hearings, he would not disclose what he actually thought or what he said was said on those, on those particular days that he wasn't able to present. Finally, he basically said that, well, we were just telling stories and the stories weren't real. He, he, he basically asserted that the fact that they were stored, they were just telling stories was exculpatory to him. So his, basically his argument is he wasn't able to use the statements that he allegedly made in his defense, not that explained or the context in which the state statements were made or to explain why the, his admission of murder was somehow misleading to the jury, but to basically contradict the statements that he had previously made. And Rule 106 doesn't provide for a defendant to admit a statement like that, a contradictory statement in his defense. Not to mention the fact that he had perfect opportunity and, in fact, did cross-examine McCrae on those particular points. You know, he asked McCrae in cross-examination, he consistently asked questions about the stories they were telling each other and asked him if they were just, quote, conversating normally, end quote, like people do in their cells, which McCrae said, well, people don't usually talk about murders in their cells. He argued that McCrae's testimony was not relevant because he's just a person that was listening to a story in a cell. A story can be anything. But at no time during cross-examination did he, the defendant, ask McCrae if they were, if what defendant said, if defendant told him they was just telling a story about Dray that was not real. Not to mention the fact that if you look at the context of the statement in conjunction with the, with McCrae's testimony previously about another conversation they had before there was a recording, they're consistent. So, I mean, there was no need for this. What he wanted to put into evidence was contradictory, was an attempt to aid him in his defense. It was not intended to place it in context or explain something that was misleading to the jury. So the completeness doctrine under 106 doesn't apply here. So, I mean, there's no error in the court's decision to allow the portion that was played to be played. And, Your Honor, I can go through the facts in great detail, but this was not a closely balanced case. In addition to this recorded statement of him committing murder, there was a statement that he made to McCrae previous to that. He used nicknames. He used Dray, which the evidence showed was Keller. He used Nook, which was his sister's nickname. He used Domo, which was his dominant Clark's case. We've got the admission made, and the admission, the admission he made on the tape recording is not the only one. The statement he made to McCrae before the recording was made. He made an admission right after the murder occurred in a phone conference conversation that was overheard by Alicia Rogers. And Eula Clark, on the night after the murder occurred, had a conversation with Dominic Clark. And during that conversation, Dominic Clark told his mother that defendant shot Keller. Now, and that clearly was hearsay, but it wasn't objected to. So the jury heard it, and it was appropriately admitted because there was no objection raised to it. In addition, the police officers were able to track the vehicle. They saw the vehicle leaving. I mean, they had video that showed the vehicle leaving the scene. It had a very distinctive mark on it. They were able to track that to the landmark apartments. There was extensive video showing that there were the movements and the timing of when Christine Harris was with Keller, Keller getting in and out of a vehicle, the defendant and Dominic Clark being present at that location, and Keller being in that vehicle. The vehicle leaving, and shortly thereafter, the police get a call about a murder. They were able to track clothing. I mean, the defendant and Dominic Clark went back to the house, and they were found to, and there was evidence that the defendant took off his clothes and put it in a bag. That bag was later recovered. There was a stain on that t-shirt. It matched the defendant's blood. So there was scientific evidence that did connect the defendant to those he removed at Eula Clark's house and Eula Clark hid. She retrieved those, gave them to the police, and the police were able to track a cell phone. Now, counsel argues that that phone belonged to Dominic Clark. Point out that that statement, they don't, the only part of the record they cite established that that phone was Dominic Clark's is an argument that was made by his counsel during one of the hearings. There was no testimony that the phone that was tracked was, in fact, that of Dominic Clark's. They don't cite to any place in the record where that is. What Landwehr testified to was a very extensive geofencing project that he undertook, and geofencing allowed him to not to track, I mean, it took four subpoenas to Google to get the information and to place this tracking in order. Counsel, may I take this opportunity to interrupt your argument and turn to the issue of Roger's evidence deposition and its admission at trial? Don't the rules of evidence require that the proponent of a witness demonstrate the unavailability of that witness at the time that the recording is used? That's what counsel argued. Why isn't that correct? Well, your honor, first of all, the issue's waived and it's forfeited. If it's not waived, it's forfeited because he never raised an objection to the use of the deposition. Well, prior to trial, he did. There's no question. There was during motions. There was a motion, I mean, when he was when they first asked to to present or use the take the evidence deposition, yes, there was an objection and the court allowed him to take the deposit, allowed them to take the deposition, but at the time of trial, he didn't object. He didn't object to the on the basis that, well, he did object on the basis of foundation, but he didn't object on the because he said, well, how would she know? You know, I was talking about this particular person. She didn't know who I was talking to, et cetera, et cetera, but he didn't raise an objection on the basis that the witness was unavailable. On the day of trial, the court asked the parties if there were any anticipated evidentiary issues that needed to be addressed. The state brought up two matters. One was the deposition they were going to play, and the other was the recording and the transcript of the over here. And this court specifically addressed the defendant and asked any objection to that Lionel Harris, and he said he only raised an objection to the transcript. Now, counsel said, well, in their reply says, well, he was only, you know, that question was only addressed to the transcript, not to the evidence deposition, but the state had just laid out two evidentiary issues, and then the court asked, do you have any objection? And he only raised an objection to the transcript and the recording of the jailhouse conversation. Let's assume, counsel, at this point that we're reviewing this under plain error and determining whether or not there was error. So the question I had was, don't the rules of evidence, as counsel pointed out, require the proponent of a witness demonstrate unavailability at the time the recording is played? Your Honor, I don't know that it is specifically required that they show unavailability at the time it is played as opposed to the time it's taken, but I would submit to the court that in this case there was evidence that was presented at least at the time that the deposition was taken, and there was no evidence that those circumstances that required her deposition to be taken in the first place for unavailability had changed at the time of the deposition at the trial took place. The reason her evidence deposition was taken was because she was living in Oklahoma and she had seven kids. The court, I mean, she was the sole care provider for those seven kids, and it was a cost, it was a hardship for her to move from, to come from Oklahoma to Illinois even for the one time that she made it. And on top of that, the court went to, the state went to great efforts at that time to get her to Illinois. I mean, they had to open a case in Oklahoma, they had to get a court to issue a subpoena there, they had to get the witness to the court to have the court advise her of that subpoena, and the state represented to the court, and the court obviously agreed at the time that the deposition was taken, that there would be, it was very unlikely that there was a substantial unlikelihood that she would be available in a second time, a second time to get her back to Illinois based upon all of those factors. Well, the defendant, excuse me, excuse me, the defendant did communicate to the court that he had information that she had returned to Illinois, did he not? He made that statement, Your Honor, but he presented no evidence to support that. I mean, in fact, he even said that she was there, but he didn't provide an address, he didn't, he didn't say how he had that knowledge. I mean, he's in the jail cell, someone had to tell him, he didn't say who gave him that information or how he learned that information, not to mention the fact that he tried to subpoena her, he didn't have an address, which is why the subpoena didn't get served, and he, I mean, there was no evidence that he, she actually had moved back other than his statement without any factual or evidentiary support for the fact that she had actually been in Illinois, and the case law is that when a continued, when a person is outside the state of Illinois, continued unavailability is presumed, and the burden shifts to the opponent to show a change of residence, and that's the Dukes case I cite. Now, in their reply, they argue, well, that's a civil case, and the civil rules for unavailability are different than the criminal rules, and they argue that the burden is higher on, the burden is, is more extensive with regards to criminal than, than civil. They don't sign any case for the proposition that that's true, but I would point out that in the Dukes case, it was a civil case, but the court did not, was not specifically addressing or discussing Rule 212 when it made that statement, and it didn't limit its holding to civil cases or Rule 212, and the Dukes case cited the Illinois Supreme, the Illinois Appellate Court case of Laird. In that case, they did specifically address to Rule 212 because it was a civil case, but once again, that statement was not limited to the situation. So, I mean, she was in Oklahoma when the deposition was taken. There's been, other than the statements made by the defendant without any, you know, qualification or, or information as to how he knew these things, that she was back in Illinois, and his own failure to, if she was in Illinois, then he should have been able to find an address, put it on a subpoena, and, and get her back into the courthouse through a properly served subpoena in order to do that. But, Your Honor, even if we agree, or this court finds that he hasn't waived it, he hasn't forfeited it, there was error in the court allowing this deposition to be taken, it still doesn't affect, because the evidence wasn't closely balanced, and that's the ultimate, you know, with first prong plain arrow, they have to show it was properly, closely balanced. Rogers' testimony consisted of three main points. The first was the defendant arrived at Dominic Clark's house during the night, late night or early morning after the murder, actually Beulah Clark or Beulah Clark's mother's. Her testimony with regards to his arrival there was cumulative, because Beulah Clark said that exact same thing. The second point that was brought out on her testimony was that the, that the defendant was removing his clothing and placing in the trash, in the trash bag. Although there was, the testimony conflicted as to the location where that happened, both Rogers and Beulah Clark connected the defendant, the clothes that was related, recovered in the trash bag, and that clothing threw a spot of blood on it, was connected to the defendant. So once again, her testimony would have been cumulative to what Beulah Clark said. And the third was this statement that he made about a speakerphone in her presence saying that he killed somebody. Well, that's not the only time the jury heard he committed, he admitted to committing murder. As I pointed out previously, he admitted it to McRae on two separate occasions. One was recorded, one was not. So even if you throw out the recording, he still admitted it, and there was testimony to supporting the fact that, and in fact, he, his statement that he made in the jail was even more consistent with the facts of this case. We'd ask that the court affirm defendant's conviction. All right. Thank you, Ms. Jones. Ms. Vincent, rebuttal argument? Thank you. Just a couple of key points. I would note that the state argues that there's no evidence of tampering, and the state certainly didn't present any evidence that the recordings had not been tampered with. We simply don't know what happened to these recordings. The state suggests that the dead air is just simply the device not recording anything. My copies of the exhibits indicate that there are just hours and hours of dead air. So it was recording, it was just recording nothing by virtue of what I was able to hear and what the state presented as exhibits. So in terms of the completeness doctrine, this isn't really a completeness problem, it's a reliability problem, and that's how it's presented because that's what the problem is. There are snippets you can hear, and then snippets of dead air, and there are other things that are inaudible, but it's an overall problem. The state alleged that they took 30 days worth of recordings, and there's very little that you can actually discern, even less that you can use, and a lot of dead air where things are actually supposed to be recording, but it's recording nothing. So that's really the overarching problem with it. As far as the phone belonging to Dominic Clark, yes, that was indicated in a pre-trial hearing, but more to the point, the state did not present any evidence at trial or any other time that that phone actually belonged to Lionel Harris. The phone is in Dominic Clark's name, and that phone is the phone that made the trip to Chicago and back, and there's at least some evidence to indicate Dominic Clark was in the car. So, you know, its value has more to do with, you know, tracking Dominic Clark than it does Lionel Harris. In terms of being able to find an address for Ms. Rogers, if Mr. Harris had had the opportunity to access a private investigator, that may very well be something he would have been able to do. So that kind of dovetails into Argument 4 about Mr. Harris being unable to access a private investigator and have a fair shot at presenting his witnesses. So in terms of his hearing, perhaps, that Ms. Rogers was in town, doesn't necessarily absolve the state of the fact that she was, quote, still unavailable. The state didn't really ever demonstrate that she wasn't or was at the time of trial. They may have demonstrated it in June of 2022, but nobody seemed to be able to establish that one way or the other in October of 2023. If I may. Go ahead, Justice Zinoff. That's all right, Justice Lannert. Well, I guess first, if I can just ask kind of a preliminary question, do you agree that being out is a sufficient basis to be found unavailable under the rule? I believe under Rule 414, which I think is the operative rule rather than 212, I believe, is absent from the hearing the proponent of the statement has been unable to procure. So by virtue of Rule 414, which does not define unavailability, but Rule 804 does, I think being out of state is a component of it. But I don't think just being out of state in and of itself establishes unavailability under Rule 804. You have to be able to demonstrate that you're unable to procure their attendance. And obviously, the state was able to procure her attendance. Yes, there are hoops to jump through, but that doesn't mean that they're unavailable and you can't procure them. It just makes it a little more difficult. So if there's the change in circumstances that the defendant alleged in this case, is that assertion enough to suggest then that someone is not unavailable or are there hoops that it was suggested, you know, there was no evidence presented? And so I guess that's my question is what that process is and whether you have any authority to support that position. Well, there isn't a whole lot of, there aren't many cases that address this. I was unable to find a case directly on point for that particular question, which is why I had to rely on the rules. So I see my time is up. So you can answer the question, though. Have you finished answering the question? And I've just lost my train of thought. So yes, I do think that simply by virtue of, there are no cases directly on point. I think the rules have to guide us. So in terms of what the rules say, I believe that they still have to be able to demonstrate current unavailability. And with that, we would ask the court to reverse and remand for a new trial. Thank you. Okay. Thank you. Thank you both. The court will take the case under advisement and will issue a written decision.